**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff - Appellee, <br><br> v. <br><br> DONALD LEE ROURKE, AKA Donald L Rourke, <br><br> Defendant - Appellant. | No. 23-663 <br><br> D.C. No. 2:15-cr-01116-DJH-1 <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Diane J. Humetewa, District Judge, Presiding

Argued and Submitted January 11, 2024
San Francisco, California

Before: SILER, CLIFTON, and M. SMITH, Circuit Judges.[**]

Donald Lee Rourke appeals as unconstitutional three special conditions of

supervised release imposed by the district court: (1) a condition requiring him to

participate in mental health treatment at the discretion of a medical or mental

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Eugene E. Siler, United States Circuit Judge for the Court of Appeals, 6th Circuit, sitting by designation.

health professional, (2) a condition requiring him to participate in one of several residential substance abuse treatment programs, including a "12-step based halfway house" at the direction of his probation officer, and (3) a condition barring his involvement with "gang activity." Rourke raised no objection to these conditions at sentencing, so our review is for plain error. Because the parties are familiar with the facts, we do not recount them here, except as necessary to provide context to our ruling. We have jurisdiction under 28 U.S.C. § 1291. We conclude that two of the challenged conditions violate Rourke's substantive rights and that our precedent requires us to remand them for modification.[1]

1.     Special Condition 4 states, in relevant part: "You must participate in a mental health assessment and participate in mental health treatment as determined to be necessary by a medical or mental health professional and follow any treatment directions by the treatment provider." A non-judicial officer, such as a medical or mental health professional, may not determine "the nature or extent of

---

[1] This case presents issues which appear largely speculative and, with the passage of time, theoretical more than real. The cited concerns could have been addressed and likely resolved had Rourke raised objections at sentencing. We also regret that our decision may present a logistical challenge and that it may have little or no practical impact if Rourke's term of supervised release ends as currently anticipated. We do not fault Rourke or his counsel for bringing the appeal, as the concerns were presumably real at the outset. By the time the appeal was heard, however, most of the term of supervised release had passed, less than four months remained, and none of the concerns appealed here had actually been realized. We invited counsel to confer to identify an acceptable solution but have been informed that no agreement was reached.

the punishment imposed upon a probationer." *United States v. Stephens*, 424 F.3d 876, 881 (9th Cir. 2005) (quoting *United States v. Pruden*, 398 F.3d 241, 250 (3d Cir. 2005)). The decision to impose inpatient or outpatient mental health treatment is such a decision. *United States v. Esparza*, 552 F.3d 1088, 1091 (9th Cir. 2009).

The plain language of Special Condition 4 permits a nonjudicial officer to impose whatever mental health treatment the professional "determine[s] to be necessary," without limitation. Although the government urges us to construe the condition as implicitly permitting only outpatient treatment, we will not construe a condition "contrary to its plain language to avoid an impermissible delegation of judicial power." *United States v. Nishida*, 53 F.4th 1144, 1153-54 (9th Cir. 2022) (quotation omitted). Moreover, the presence of an outpatient limitation in the substance abuse treatment condition only a few lines above, and the fact that there are other sentences imposed within the past year in the District of Arizona that do specify "outpatient" mental health treatment suggest that if the district court had limited the condition accordingly, it would have done so expressly, not by silence.

Because Special Condition 4 is an improper delegation, its imposition was error, and the error is plain under *Esparza* and *Nishida*. The error affects Rourke's substantial rights "because [he] must comply with the conditions or face revocation of [his] supervised release," and "imposing a sentence not authorized by law seriously affects the fairness, integrity, and reputation of the proceedings."

23-663

*Nishida,* 53 F.4th at 1153 (quotation omitted). We thus remand so that the district court may "clarify the scope of authority delegated." *Id.* at 1155.

2. Special Condition 5 states, in relevant part:

> You must reside at and participate in a Residential Reentry Center, a residential substance abuse treatment program, a 12-step based halfway house, a sober-living environment, or any combination thereof as approved and directed by the probation officer for up to 180 days, unless discharged earlier by the probation officer.

Where the district court "unambiguously direct[s] that the nature of [defendant's] punishment would include inpatient substance abuse treatment," it is not unlawful delegation to allow a probation officer to make decisions about the duration and location of that treatment. *United States v. Taylor*, 78 F.4th 1132, 1137 (9th Cir. 2023). Because the district court cabined the length of time Rourke could be compelled to participate in treatment (180 days) and specified that his treatment would be "residential" (i.e., inpatient), there is no unlawful delegation.

However, the requirement that Rourke reside at and participate in "a 12-step based halfway house" if directed by his probation officer poses another constitutional concern. A twelve-step program is "a distinctive approach to overcoming addictive, compulsive, or behavioral problems," which "asks each member to ... recognize a supreme spiritual power, which can give the member strength." *Twelve-step program*, APA DICTIONARY OF PSYCHOLOGY; *see also 12-step,* MERRIAM-WEBSTER DICTIONARY ("A program that is designed especially to

help an individual overcome an addiction . . . by adherence to 12 tenets emphasizing personal growth and dependence on a higher spiritual being."). We have previously held that compelling a parolee to participate in an "Alcoholics Anonymous 12 step program" violated the Establishment Clause. *Inouye v. Kemna*, 504 F.3d 705 (9th Cir. 2007). Supervised release is the same as parole for Rourke and so raises the same concern.[2]

The remaining question is whether the error is plain. As early as 2007, when *Inouye* was decided, it was "uncommonly well-settled" that an individual could not be compelled to attend a religion-based substance abuse treatment program. *Id.* at 716. Accordingly, the error was plain, and remand to the district court to modify the condition is required. So long as the revised condition explicitly notes Rourke's right to object to the imposition of religious-based treatment and to be offered a secular alternative, no Establishment Clause violation will result.

3.      Special Condition 7 bars Rourke from being "involved with gang activity" and "possess[ing] any gang paraphernalia." He contends that the term "gang" is unconstitutionally vague. A condition of supervision may be void for

---

[2] The government correctly observes that "12-step programs come in many forms, including non-religious," and it may further be the case that "it is the common practice of the Probation Office to offer secular treatment alternatives." But Special Condition 5 does not limit that alternative to a non-religious program, nor does it assure that an objection by Rourke to a religious program will be honored. We "cannot assume, as the government suggests, that approval [of an alternative] will be granted." *United States v. Sales*, 476 F.3d 732, 737 (9th Cir. 2007).

vagueness if it defines proscribed conduct in terms "so vague that men of common intelligence must guess at its meaning and differ as to its application." *United States v. Hugs*, 384 F.3d 762, 768 (9th Cir. 2004) (quoting *United States v. Loy*, 237 F.3d 251, 262 (3d Cir. 2001)). Although the term "gang" has no uniform common or statutory definition, it is defined in the legal context as a "group of persons who go about together or act in concert, esp. for antisocial or criminal purposes." *Gang*, BLACK'S LAW DICTIONARY (11th ed. 2019). While this definition may be spacious enough to accommodate different interpretations, we are not convinced that it is so vague that "men of common intelligence must guess at its meaning." Moreover, with no controlling precedent that speaks to the question, any error would not be plain.[3]

**AFFIRMED IN PART AND REMANDED IN PART.**

---

[3] The district court may consider constraining the prohibition to "criminal street gangs" upon resentencing, if that is what the district court intended. That term is statutorily defined at 18 U.S.C. § 521(a) and has been consistently upheld against vagueness challenges. *See United States v. Soltero*, 510 F.3d 858 (9th Cir. 2007); *United States v. Vega*, 545 F.3d 743 (9th Cir. 2008).